LEROY BLOOMBERG AND SALLY BLOOMBERG, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2977–78.    Filed September 23, 1980.

*David M. Buda,* for the petitioners.
*Charles M. Layton,* for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioners' income tax for the year 1974 in the amount of $6,849.33. Due to concessions of the parties, the only issues for decision are (1) whether petitioners are entitled to an investment credit under sections 38 and 46, I.R.C. 1954, for equipment owned by petitioners and leased to petitioners' professional corporation, Leroy Bloomberg, M.D., Inc., and (2) whether

petitioners are entitled to an investment credit in excess of $65.86 for two automobiles owned by them and purportedly used by them in their business as employees of Leroy Bloomberg, M.D., Inc. .

## FINDINGS OF FACT

The stipulated facts are incorporated herein by this reference.

Petitioners Leroy and Sally Bloomberg, husband and wife, resided in Newark, Ohio, when they filed their petition herein. They filed a joint Federal income tax return for the year 1974 with the District Director of Internal Revenue, Cincinnati, Ohio.

Leroy Bloomberg (herein petitioner) is an ophthalmologist and is employed as a physician by a professional corporation known as Leroy Bloomberg, M.D., Inc., in Newark, Ohio (hereinafter referred to as the corporation). Leroy was president of the corporation during 1974. On August 1, 1974, the corporation leased certain medical equipment and office furniture and fixtures from petitioner under a written lease agreement. The equipment and furnishings were purchased by petitioner in 1974 and were transferred to and first placed in service by the corporation in 1974.

The lease agreement between petitioner and the corporation was for a period of 5 years commencing on August 1, 1974, and provided that the lessee should pay lessor an aggregate rental of $40,954.20 over the term of the lease, payable in monthly installments. Title to the equipment was to remain in lessor's name and, upon termination, the equipment was to be returned to the lessor in the same condition as when received by lessee, reasonable wear and tear excepted. Upon default by the lessee, the lease could be terminated by lessor by written notice, but there was no provision for termination by the lessee.

The furnishings and equipment leased were purchased by petitioner for an aggregate cost of $35,979.56, were reported on the depreciation schedule attached to petitioners' 1974 return at that cost, and depreciation deductions on the furnishings and equipment were claimed on the return, based on estimated useful lives of 7 years for all items except one, which used a useful life of 5 years. Petitioners also reported the rent received from the corporation as income on their 1974 return.

Thomas E. Brock, Jr., is president of Medical Management, Inc., of Columbus, Ohio. The business of Medical Management,

Inc., is to render accounting and tax service to physicians and dentists, which it did for the corporation and petitioners. Brock was secretary of the Bloomberg corporation in 1974.

On June 10, 1977, Brock, as president of Medical Management, Inc., wrote a letter to petitioners, advising "Effective date of this letter, all equipment leases between you, shareholder, and the corporation will be terminated. You will receive a monthly office equipment and/or office furniture allowance in the amount of $232.42, to commence 7/1/77." This letter also advised petitioner not to pay himself any further lease payments from the corporation.

Petitioner purchased a 1974 Chrysler Imperial automobile on September 25, 1974, at a cost of $5,638, and a 1974 Mercedes Benz automobile on August 26, 1974, at a cost of $16,939. Petitioner did not lease these automobiles to the corporation but was paid an automobile allowance by the corporation which he included in taxable income. On the depreciation schedule attached to petitioner's 1974 return, an estimated life of 3 years was claimed for the Imperial, depreciation of $930.21 was claimed, and also an investment credit of $131.55. The Mercedes was also listed on the depreciation schedule with an estimated useful life of 7 years; depreciation in the amount of $1,580.92, and an investment credit of $1,185.73 was claimed.

In the notice of deficiency, respondent disallowed the entire investment credit claimed on the return, which included the credit claimed on the leased equipment and furnishings, and on the automobiles. On brief, respondent concedes that petitioner is entitled to 5 percent of the investment credit, or $65.86, on the automobiles.

OPINION

Section 38, I.R.C. 1954, provides for a credit against tax for investments in certain depreciable property, in an amount determined under section 46. Section 46(a)(2) provides that the amount of the credit shall be certain specified percentages of the qualified investment in the property. Section 46(c) defines "qualified investment" to mean the aggregate of the applicable percentages of the basis of new and used section 38 property placed in service by the taxpayer during the taxable year. Section 46(e)(3) provides:

A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if—

\*    \*    \*    \*    \*    \*    \*

(B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 \* \* \* exceeds 15 percent of the rental income produced by such property.

Section 48(a) defines the term "section 38 property" as including tangible personal property (among other things). Section 48(b) defines "new section 38 property" as including section 38 property acquired after December 31, 1961, if the original use of such property commences with the taxpayer and commences after such date. Section 48(d) provides that a person who is a lessor of property may (in accordance with regulations) elect with respect to new section 38 property to treat the lessee as having acquired such property.

With regard to the equipment, furniture, and fixtures purchased by petitioner in 1974 and leased to the corporation on August 1, 1974, there is no question that petitioner qualifies for the applicable investment credit on that property, or the amount thereof, if he meets the requirements of section 46(e)(3) quoted above.[1] The issue is whether the term of the lease is less than 50 percent of the useful life of the property, and whether the section 162 allowable deductions, with respect to the property, exceed 15 percent of the rental income produced by the property.

On its face, the term of the lease, 5 years, exceeded 50 percent of the estimated useful lives of the assets claimed on petitioner's depreciation schedule, being 5 to 7 years. Petitioner claims, however, that the lease was effectively canceled by Brock's letter of June 10, 1977, which was prior to the expiration of 50 percent of the useful lives of any of the leased assets, and that the cancellation made the lease null and void ab initio so the property should be considered as first placed in service by petitioner in 1974. We disagree.

First, there is considerable doubt in our minds that Brock's letter of June 10, 1977, could have effectively canceled the lease. His letter was written in his capacity as adviser to the

---

[1]Petitioner did not elect to pass thru the investment credit to the lessee under sec. 48(d).

corporation-lessee, and there was no provision in the lease for the lessee to cancel even if Brock had authority to act for the lessee. But be that as it may, there is nothing in the letter to even suggest that it was intended to be retroactive. Its terms are prospective only. In addition, there is no evidence that the parties adjusted their accounts to return the rentals previously received to the lessor.

Second, it is clear that the determination of entitlement to the investment credit must be made under the conditions that existed in 1974, the year the equipment was first placed in service (*World Airways, Inc. v. Commissioner*, 62 T.C. 786, 809 (1974)), and that petitioner could not retroactively change the circumstances to meet those conditions for tax purposes. See *Gordon v. Commissioner*, 70 T.C. 525, 530–531 (1978).

The entire thrust of the investment credit provisions relates to the taxable year the property is first placed in service. The credit is allowable only for that year. Sec. 1.46–3(d)(4), Income Tax Regs. Section 48(a)(1), defining section 38 property, states that the term includes only property with respect to which depreciation is allowable and having a useful life (*determined as of the time such property is placed in service*) of 3 years or more. Section 1.46–3(d)(1) provides that section 38 property shall be considered placed in service in the taxable year in which the period for depreciation with respect to such property begins (petitioner claimed depreciation on these assets for 1974). And section 46(e)(3) of the Code refers to "the term of the lease (taking into account options to renew)" which would require a determination as of the date the lease is effective. It also refers, with reference to the section 162 deductions, to the first 12 months after the date on which the property is transferred to the lessee.

Looking at the circumstances existing in 1974 at the time petitioner purchased the assets and transferred them to the lessee who first placed them in service at that time, the term of the lease clearly exceeded 50 percent of the useful life of the assets, so petitioners do not qualify for the investment credit with respect to those assets under section 46(e)(3) or any other section of the Code. Furthermore, petitioner, who has the burden of proof, offered no evidence that the section 162 deductions allowable with respect to the property exceeded 15 percent of

the rentals from such property, another requirement of section 46(e)(3).

With regard to the two automobiles, they were not leased to the corporation but were purportedly used by petitioner in his business of being an employee of the corporation. Suffice it to say that petitioner offered no evidence regarding either his general use of the cars or the percentage of business usage of the cars. If the cars were not used in petitioner's trade or business or in the production of income, petitioner would not be entitled to depreciation on them. Sec. 167(a). And if depreciation on the cars was not allowable to petitioners, the cars do not qualify as section 38 property (sec. 1.48–1(a)(1), Income Tax Regs.), and no investment credit would be allowable with respect to them. Respondent concedes on brief that petitioners are entitled to an investment credit equal to 5 percent of the credit allowable if the cars met all the requirements of sections 38, 46, and 48. This is apparently because the parties stipulated that petitioner is entitled to deduct 5 percent of the amounts allowed by the corporation to petitioner for business use of the cars. We will accept this concession by respondent but must affirm respondent in his disallowance of any additional investment credit with respect to the automobiles.

*Decision will be entered under Rule 155.*